J-A30027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID G. HAWK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRACEY C. HAWK, | : | |
| | : | |
| Appellant. | : | No. 1749 WDA 2017 |

Appeal from the Order, October 26, 2017,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): FD 10-008168-016.

| | | |
|---|---|---|
| DAVID G. HAWK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRACEY C. HAWK | : | No. 1795 WDA 2017 |

Appeal from the Order Entered, October 26, 2017,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): FD 10-008168-016.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

DISSENTING MEMORANDUM BY KUNSELMAN, J.:      **FILED JUNE 25, 2019**

The Majority's analysis is thorough and eminently reasonable. I respectfully dissent, because I do not find the parties' use of the terms "modification" and "termination" to be ambiguous. Even if I did so find, I would resolve the ambiguity by consulting the Rules of Statutory

_____
* Retired Senior Judge assigned to the Superior Court.

Interpretation, before considering the parties' own beliefs and conduct. Under either approach, I would reverse the trial court and reinstitute the alimony.

First, I note that the source of the alimony in this case was the parties' own agreement, as opposed to a court award. In such cases, in accordance with contract law, we give words their ordinary meaning and we ascertain the intent of the parties from the document itself. **See Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004). I do not find the terms "modification" and "termination" to be ambiguous. In my read of the agreement, the parties employed the terms "modification" and "termination" in separate ways at separate times.

Regarding modification, the agreement incorporated the entirety of the Domestic Relations Code's Chapter 37, including Section 3706's bar to alimony. **See** consent order of court, dated October 10, 2014, at ¶8 ("This alimony shall be **modifiable** in accordance with the provisions of 23 Pa.C.S.A. § 3701, *et. seq*.") (Emphasis added). But not every section of the alimony chapter speaks to modification; thus not every section applies.

For instance, Section 3704 ("Payment of support, alimony and alimony *pendente lite*") has no bearing on modifiability of alimony. Likewise, Section 3705 ("Enforcement of foreign decrees") is irrelevant. To determine whether Section 3706 ("Bar to alimony") applies to the agreement, one must first determine whether Section 3706 addresses modification. I conclude that it does not. Section 3706 accomplishes two things: 1) prevents the court from

issuing an alimony award if cohabitation exists and 2) *terminates* an alimony award if cohabitation is discovered.  It does not modify anything.

Regarding "termination," the parties employed the term once, to denote the expiration of the alimony payments. *See* Order of court dated October 10, 2014, ¶ 7(b)(ii) ("[Husband] shall pay to [Wife] … through October 16, 2027, at which time [Husband's] alimony obligation shall *terminate*.")(Emphasis added).

Because I may only ascertain the parties' intent from the document itself, I view these provisions to indicate that the parties understood "modification" and "termination" have two different meanings.  When does the alimony obligation terminate? 2027.  Can it ever be modified? Yes. How? The same manner that an alimony award can be modified, when either party experiences a change in circumstances.

Although the initial source of Wife's alimony was an award, the parties converted the award to an agreement via the April 2015 consent order.  That means if they wanted alimony to terminate upon Wife's cohabitation, the parties were obligated to include specific language to that effect. *See, e.g., Woodings v. Woodings*, 601 A.2d 854, 859 (Pa. Super. 1992) (holding that unless parties so specify, an alimony agreement may not be modified, extended or terminated).  In my opinion, referring to the entirety of the alimony chapter for modification of this agreement is not enough to specifically agree to termination upon cohabitation.

Second, even if I agreed with the Majority that the use of the terms was ambiguous, instead of looking to the parties' conduct – as the Majority does – I would first consult the Rules of Statutory Interpretation to resolve the ambiguity.[1]  The parties themselves referred to the statutes to explain when alimony could be modified.  If the court must refer to statutes to decide an issue, it follows that the court should refer to the case law and the Rules of Statutory Interpretation to resolve an ambiguity within those statutes.

From there, I note that Section 3701 of the Divorce Code also clearly differentiates between "modification" and "termination."  ***See*** § 3701(e).

Section 3701(e) provides:

> **(e) Modification and termination.--**An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be ***modified***, suspended, ***terminated*** or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

23 Pa.C.S. § 3701(e) (emphasis added).

Section 3701(e) addresses four distinct concepts pertaining to alimony: modification; suspension; termination; and reinstitution.    Modification

---

[1] It is well settled that courts interpreting a statute must strive to give effect to every one of its provisions. ***See*** 1 Pa.C.S.A. § 1921(a); ***see also Cimino v. Valley Family Medicine***, 912 A.2d 851, 853 (Pa. Super. 2006), *appeal denied*, 921 A.2d 494 (Pa. 2007) ("We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.")).

concerns the ability to change the amount of alimony. Termination pertains to when alimony would permanently stop. Suspension of alimony is a temporary hold on alimony payments, and a reinstitution of alimony resumes the payments that were suspended. These are all distinct terms. Thus, I would again conclude that the agreement's generic reference to the alimony statutes for **modification** was insufficient to **terminate** Husband's obligation upon Wife's cohabitation.

Finally, regarding Wife's conduct, I acknowledge that Wife clearly thought cohabitation would cause her alimony to stop, and that her fear of financial hardship motivated her to conceal the cohabitation. But it is less clear that Wife understood whether the interruption of her alimony would be permanent or temporary. Because Wife received $2,640 per month, even a temporary suspension or a reduction of alimony could cause her financial hardship. Thus, to the extent we infer intent from the parties' conduct, one could argue that Wife hid her cohabitation, not because she believed cohabitation would permanently stop her alimony, but because she thought cohabitation temporarily suspended her payments.

For instance, Wife also thought – mistakenly – that any romantic or sexual relationship, short of cohabitation, would also stop her alimony. Consequently, I hesitate to give much credence to a party's own interpretation of a contract, especially when that party misunderstands the legal effect of the terms she agreed to. In any event, what Wife actually agreed to was

"modification" by statute. Regarding "termination," she agreed only to a date certain.

To conclude: because I do not find the use of these terms to be ambiguous, I would not consider the parties' conduct to discern their intent. Even if the terms were ambiguous, under the unique circumstances presented in this case, where the parties incorporated an entire chapter of the Domestic Relations Code to define a term in their contract, I would consult the Rules of Statutory Interpretation before the parties' beliefs to resolve the ambiguity. In either case, I would conclude that cohabitation has no bearing on Wife's right to alimony under the express terms of this agreement, regardless of what the parties believed. I would therefore reverse the trial court's decision to terminate alimony.

I concede that my views are not unassailable, especially in light of this atypical alimony agreement that sought to be treated, at least in part, as if it were an adjudicated order. This Court was tasked with navigating the competing interplay between an alimony contract and an alimony award. Reasonable minds could certainly disagree with my analysis and indeed the learned Majority does.